CASE 55.—ACTION BY O.PHA B. OSBORNE AGAINST SAM-
UEL BROWN'S ADMINISTRATOR.—January 25,
1910.

## Brown's Admr v. Osborne

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Af-
firmed.

1. Payment—Application.—Where one makes a payment on an
account, a part of which is barred by limitation, and he gives
no direction to what items on the account the payment shall
be applied, the law authorizes the application of it to the pay-
ment of the oldest items on the account.

2. Limitation of Actions—Part Payment—Entry of Credit.—The
mere putting a credit on an open account, unless there is
evidence that the amount represented by the credit was
paid by the debtor, is not sufficient to stop the running of
limitations.

3. Limitation of Actions—Part Payment—Effect.—Where a pay-
ment is made by the debtor on an open account before the
same is barred by limitations, there is a sufficient acknowl-
edgment of the debt to start the running of the statute
anew.

4. Limitation of Actions—Part Payment—Effect.—Where a
debtor at the time of the making of a payment on account
has before him the account, or knows what it is made up
of, and the amount of it, the payment is an acknowledg-
ment of the entire account and stops the running of limi-
tations up to that time; but the mere making of a payment
on an account consisting of many items, some of which the
debtor recognizes as just and others not, is not an acknowl-
edgment of the whole account and does not stop the run-
ning of limitations as to the part not paid.

5. Limitation of Actions—Part Payment—Effect.—Where one in-
debted for board on an account, no part of which was barred
by limitation, made payments thereon, accompanied by the
statement that he wanted the payments to go on the account

for board, the payments were an acknowledgment of so much of the account as was then due and unpaid, and stopped the running of limitations, and created a new period from which limitations must run.

6. Limitation of Actions—Part Payment—Evidence.—An acknowledgment of an indebtedness on account made at the time of payments thereon, and as a part of the same transaction, is competent to show for what purpose the payments are made.

7. Limitation of Actions—Part Payment—Application.—Where one indebted to another on account for money borrowed and for board made payments thereon, accompanied by the statement that the payments should go for the board, the payments did not acknowledge the indebtedness for money borrowed and did not stop the running of limitations thereon.

E. E. McKAY for appellant.

KELLEY & CHERRY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Samuel Brown, appellant's intestate, died in March 1908, and this suit was brought against his administrator on the following account, which we set out in full for the purpose of illustrating the alleged errors complained of in the trial of the case:

Samuel Brown, deceased, in Account with Mrs. E. Osborne.
Oct. 10, 1900. To cash borrowed.....:.......... $6 00
Jan. 10, 1901. To cash borrowed.............. 12, 00
Sept. 1, 1903. To 32 months board and washing
    from January. 1, 1901, to September 1, 1903,
    at $15 per month.....,.....................480 00
Sept. 1, 1904. To 2 months' board and washing
    July and August...........,...........,...... 30 00
Sept. 1, 1904. To 2 months' board and washing,
    July and August...,................,.......... 30 00
Sept. 1, 1905. To 2 months' board and washing, July
    and August.......,........................ 30 00
                                        ——— $588 00

Credits

Nov. 10, 1902. By cash.............................150 00
Aug. 10, 1907. By 1 sow given to Mason.......... 15 00
Aug. 15, 1907. By 1 cow given to Bessie........... 35 00
                                                   ——— 200 00
    Balance due.......................................$388 00

The answer controverted all the material aver-
ments of the petition, and further set up and relied
on the five years' statute of limitations as a bar to
so much of the account as was due more than five
years before the death of the intestate.

The deceased was a bachelor and quite an old man
when he died, and Mrs. Osborne was his niece. There
was evidence showing that in 1901 Mrs. Osborne
loaned him $12, that he boarded at her house during
the time mentioned in the account, and that the
charges made were reasonable. It was also shown
that the Mason and Bessie mentioned in the account
were children of Mrs. Osborne, and that when he
gave to them the sow and cow it was for the purpose
of getting credit by their value on his board, and
that when he paid the $150 credited on his account
he said he wanted it to go as part of what he owed
for board, and that on several occasions he said he
owed Mrs. Osborne for board and wanted her paid.
Virtually no evidence was introduced in opposition
to the claim. The court excluded from the considera-
tion of the jury the item of $6, and instructed them,
in substance: (1) That if they believed that Mrs.
Osborne loaned the intestate $12 and furnished him
board and lodging and did his washing under an
agreement by which she was to be compensated there-
for, they should find for her the amount of the money
loaned and the reasonable value of the board and
washing, not exceeding the amount claimed. (2) That

if they believed that any part of Mrs. Osborne's
claim was barred by the statute of limitations, they
should apply the payments made by the intestate on
that part of the account which was barred. (3) That
the plea of limitation was not available if the jury be-
lieved from the evidence that the intestate, within
five years next after that portion of the account sued
on that was due more than five years before his death,
acknowledged to Mrs. Osborne or her agent his in-
debtedness. It is insisted by counsel for appellant:
(1) That the instructions are erroneous; (2) that the
evidence is not sufficient to show a promise or agree-
ment upon the part of the intestate to pay board;
and (3) that the greater part of the account was bar-
red by the statute of limitations, and the acknowledg-
ments or payments by the intestate did not prevent the
statute from running. The first instruction is criti-
cised on account of the inaccurate use of a few words;
but we do not think it possible that the jury could
have been misled by these verbal errors, or that they
prejudiced substantially or otherwise the rights of
the appellee. Except for the credits upon the ac-
count, and the acknowledgments made by the deceas-
ed that he owed it, a considerable part of the account
would be barred by the statute. And so two ques-
tions are presented: First, the effect of the pay-
ments; and second of the acknowledgments.

When a person makes a payment upon an account,
a part of which is barred by limitation at the time the
payment is made, and there is no direction made by
him as to what items on the account the credit shall
be applied to the extinguishment of, the law author-
izes the application of it to the payment of the oldest
items on the account, although these items, except for
the payment, would be barred by the statute. This

the court in effect directed the jury to do. But the mere putting a credit on an open account or note, unless there is evidence showing that the amount represented by the credit was paid by the debtor on the note or account, will not be sufficient in itself to stop the statute from running. Hopkins v. Stout, 6 Bush 375; Frazer v. Frazer, 13 Bush 397. If the mere entry of a payment as a credit upon an open account or note would of itself have this effect, it would be an easy matter for the creditor, if he felt so disposed, to evade the plea of limitation and stop the statute from running against any note or account that was barred. But, when a payment is made by the debtor upon an open account like this one or a note before it is barred, and this fact is shown by competent evidence it will be a sufficient acknowledgment of the debt to stop the running of the statute up to that time, and the period of limitation will then be computed from the date of the payment. English v. Wathen, 9 Bush, 387; Rankin v. Anderson, 69 S. W., 705, 24 Ky. Law Rep., 647; Carr v. Robinson, 8 Bush, 269.

Nor should any distinction be made between the effect of a payment upon an open account like this and a note. An open account is a debt, as well as a note; the only distinction between the two being that one is a promise in writing signed by the debtor, while the other is not. An acknowledgment of the justice of an account will have the same effect as the acknowledgment of the justice of a note. Ditto v. Ditto, 4 Dana, 502; Trousdale v. Anderson, 9 Bush, 276. And so with reference to a promise to pay either a note or account.

But we think it proper at this point to say that we do not mean to hold that a payment on an account consisting of more than one item or an account

containing a charge for more than one particular thing would stop the statute from running as to any part of the account that the debtor did not then know was in existence or that he did not have in mind when the payment was made. The account upon which a payment is made might consist of many items, made up of various things, some of which the debtor may recognize as just and others that he may not, and the mere fact of making a payment on such an account— nothing more being said or done—would not be an acknowledgment of the whole account or stop the statute from running as to the remainder of it not paid, in the absence of evidence that the account was before the debtor at the time the payment was made, or that he at the time knew what the account was for and the amount of it. But if the debtor at the time he makes the payment has before him the account, or knows what it is made up of and the amount of it, no matter how many items it may contain or what they are for, then his payment will be an acknowledgment of the justice of the entire account and have the effect of cutting off the time before the payment was made. In this case the account, except as to the item of $12 for money loaned, was all due for board. The debtor knew that he owed for board, and, when he made the payments accompanied by the statement that he wanted them to go on his board, the payments were an acknowledgment of so much of the account as was then due and unpaid, and saved from the operation of the statute the antecedent time, and served to create a new period from which it should run. It is true there is no evidence that he knew the exact amount of the account or the sum he was being charged for board, but he did know that he owed an account for board, and it was upon this account that

he made the payments. An unqualified and uncon-
ditional payment made upon a debt is the very best
evidence of its justice, and has the same effect as
would an express acknowledgment that the debt was
just or an express promise to pay. It is sufficient to
sustain a new action if the debt is barred by the stat-
ute at the time the payment is made, or to cut off the
time before the payment is made, if the debt is
not then barred. At the time the $150 was paid for
board, no part of the account was barred by the
statute, and the effect of the payment was to extin-
guish and satisfy the oldest items on the account for
board. The further effect of the payment was to ac-
knowledge that the remainder of the account for
board then existing was just, so that, when this credit
of $150 was made, it created a new period from
which the statute of limitations commenced to run.
In other words, the five-year statute commenced to
run from the date of the credit, and not from the
date of the indebtedness as set out in the account.
The payment cut off and excluded from the period
of limitation the time that had elapsed when the
new promise was made. Gilmore v. Green, 14 Bush,
772. On August 10, 1907, when the sow was given to
Mason, and a credit of $15 obtained upon the board,
this payment again created a new period from which
the five-year statute commenced to run. And so with
the payment made on August 15, 1907. Taking this
view of the case, it is manifest that no part of the ac-
count was barred by the statute, as the two last pay-
ments were made within the five years next before
the death of the intestate.

It is not necessary that we should give controlling
importance to the acknowledgments of the deceased
of his indebtedness for board, or his promise to pay

board, as the best evidence of the indebtedness and his acknowledgments of liability therefor are the payments, admittedly made by him. If no payment had been made, there might be some question whether the acknowledgments were sufficient in view of the fact that they were not made directly to Mrs. Osborne or her agent. Trousdale v. Anderson, 9 Bush, 276; Hargis v. Sewell, 87 Ky. 63, 7 S. W. 557. But these acknowledgments were made at the time of the payments and as a part of the same transaction, and, therefore, they were competent to show for what purpose the payments were made.

The evidence in our opinion was sufficient to support the petition that the intestate received from Mrs. Osborne the services mentioned in her account, and that he agreed to pay her for them, and that the prices charged are reasonable. But, as to the item for $12 for money loaned, there is no evidence that the debtor intended to pay it, or that he acknowledged its justice, or that at the time he made the payment he knew of the existence of this item. Therefore to the extent of this item the judgment was erroneous. But this error is not sufficient to justify a reversal. Upon a return of the case the court will credit the judgment by $12.

Wherefore, the judgment of the lower court is affirmed.